The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the Judges of the United States Court of Appeals for the 4th Circuit, are admonished to draw nigh and give their attention for the Court is now sitting. God save the United States and this Honorable Court. Marcus, are you ready? Good morning and may it please the Court. Jonathan Marcus on behalf of Plaintiff's Appellants. The named plaintiffs in this case are homeless alcoholics who Virginia has designated habitual drunkards. Based on that designation, defendants have arrested, prosecuted, and incarcerated plaintiffs repeatedly for mere possession of alcohol. The circumstances and frequency of their arrests, including for sleeping or standing near beer cans or smelling like alcohol, clearly demonstrate that Virginia is targeting plaintiffs based on their known habitual drunkard status. Why just homeless? Why just the homeless ones? Well, the class we represent is a class of homeless alcoholics and it's our position that they're uniquely targeted by this statute. But only for the purpose that they don't have a home. What about possession? If you're a habitual drunkard and you are found possessive at home, isn't that also a violation? Well, Virginia has said in their motion to dismiss that this statute targets public behavior, repeated public drunkenness. So, in our view, it clearly is targeting homeless alcoholics, it's targeting people who are engaged in this behavior in public. That may be your subjective view, but the statute doesn't say anything about homelessness. You can have ten homes and still be a habitual drunkard, and if you're drunk and published, come under the statute. Well, a couple of points, Your Honor. Isn't that accurate? Isn't that accurate? That someone could come under it, they would have the choice to avoid the status by not getting habitually drunk in public. The statute would cover the person that I illustrated in that statement, correct? They would be, they could, if they're someone... Either they are or they aren't, which is it? Right, but they have a choice to avoid, that's the point. They have a choice not to be subject to this status. The only people who don't have a choice to be subject to the status of habitual drunkards are homeless alcoholics. Excuse me, I'm sorry, I didn't mean to interrupt. Mr. Marcus, could you tell us what a habitual drunkard is? Well, there's no definition in the statute, but the district court in the Fisher case, which this court affirmed in a procuring opinion, defined it as someone who is continually in the habit of being intoxicated. And then the court went on to say, and in particular, it was particularly clear in that case because the individual was homeless and was repeatedly drunk in public, which is consistent with Virginia's statement that the statute targets public behavior. Can I mention that this whole idea of targeting, that sounds to me like a disparate impact theory. That the statute has a disparate impact on homeless alcoholics. But while alcoholics and homeless persons are certainly deserving of civic care and compassion, the homeless are not a suspect class. They don't have an immutable characteristic that attaches to suspect classes, such as race or ethnicity. And when you say they're targeting, you're saying this statute has a disparate impact upon this group. But every law has a disparate impact. Every law has a disparate impact upon someone. It has a greater impact upon some groups than upon others. But having a disparate impact on a non-suspect class does not make the law unconstitutional because there isn't a law in existence. It doesn't have relatively greater or relatively lesser impacts upon some groups of people. But that doesn't make it unconstitutional. And to have a disparate impact theory for non-suspect classes is a pretty wide-open principle. Your Honor, I guess I have two responses to that. One is we have an equal protection claim, and I'll address that as well and what standard of review there should be because I think you're getting into that claim as well. But whether or not there's an equal protection violation here, we have an Eighth Amendment claim that's based on the status of our defendants and the fact that this statute targets. And I don't mean by disparate impact. The intent of this statute is to target. Virginia has said the design of the statute is to target public behavior. So the only people who can't avoid the status of being a habitual drunkard are homeless alcoholics. It's not by impact. It's by design. I'm sorry. Counsel, can I bring you back to the coverage of the statute and Judge Winn's first question? So the state says this targets public behavior, but the statute doesn't say that, right? I mean, on its face, the statute would apply to a habitual drunkard possessing alcohol in his or her home, right? Well, we don't believe so. I mean, as Judge Motz pointed out in her concurring opinion in last August and as our amicus National Law Center for Homelessness and Poverty pointed out in a brief, the term habitual drunkard has historically been associated with homelessness and vagrancy. So you're saying that in order to be interdicted in the first place, you have to be drinking in public? Yes, that's correct. Okay, but that's not in the statute. It's not the habitual drunkard is not defined that way in the statute, right? Well, there's no definition, but again, there's a historical association. Judge Motz cited an article, our amicus cited articles in their brief that there's a historical association between the term habitual drunkard and homelessness and vagrancy. I'm troubled because there's all this stuff we're supposed to understand about the statute, but none of it is written down in the statute books. That's what habitual drunkard means, that this targets public behavior. Because if you just read it, and there's a whole provision for getting search warrants for homes. It's just not obvious on the face of it that it's limited in the way you're suggesting. Well, I mean, we have Virginia saying that's the design of the statute. We have the state of Virginia saying the statute's designed to target repeated public drunkenness. So we have that. We have, again, a historical association that's been pointed out between habitual drunkards and homelessness and vagrancy. We also have the allegations in our complaint about how we have both anecdotal allegations about how the statute is repeatedly being used to arrest, prosecute, and incarcerate our clients. Why don't we have a fourth amendment challenge to that? Your Honor, with respect, I really think that misses the forest for the trees. This is a systemic problem. While we could have a separate claim for a fourth amendment violation in every single arrest, some of our clients have been arrested and prosecuted up to 30 times. But the only thing that's targeted here, criminally targeted, are acts. The acts of consuming, purchasing, possessing, or any alcoholic beverage. I respectfully disagree because it's based on the status of being a habitual drunkard. If you don't have that status, if our clients didn't have that status, they'd be free to engage in that possession. They couldn't be arrested. They're being arrested because of the status. But the status is not criminalized. That's the point. It is. No, it's not. Through a two-step process, it is. That's right. But you have to go through a two-step process. And the second step of that process involves acts. And the Commonwealth of Virginia has every right. It has no right to criminalize status as in the first step. And it has not done so. But it does have a right to criminalize acts involving alcohol, such as consuming, purchasing, possessing, et cetera, et cetera. Robinson makes that clear. And that and only those acts is what Virginia criminalizes. Respectfully, Your Honor, I don't think Robinson makes that clear. Robinson was talking about drug addiction and found that drug addiction is a status crime. It also talked about drug possession and other drug crimes that are universally prohibited crimes. Robinson did not specifically address the situation where you have a statute that targets a status and prohibits an act that is inseparable from that status and doesn't prohibit it as anybody else. When you're saying there's sort of a status plus act here, this act is inseparable from the status and everyone else can avoid being an individual drunkard. Going back to Judge Agee's question, if you've been interdicted, it says you shall not possess any alcoholic beverages. That's one part. So that could be in your house. Then it says nor be drunk in public. So it is broader than simply homeless people, isn't it? I'm sorry. It says if you have been interdicted, you shall not possess any alcoholic beverages. It doesn't say in public until later where it says nor be drunk in public. So it doesn't simply target the homeless, it doesn't sound like. Going back to Judge Agee's question. Yes, Your Honor. But it operates in tandem with the habitual drunkard provision. And the habitual drunkard provision, as Virginia has said, is designed to target public behavior. Counsel, do you agree? Counsel, do you agree? I mean, it seems like you're fighting this idea awfully hard that it applies only to homeless based on what sounds like some statement made by the state and some historical practice. When the statute itself plainly applies to homeless and non-homeless. If you lose on that point, does that totally ban your Eighth Amendment claim? Do you have an Eighth Amendment claim if we reject that argument? Well, let me just say, I'll answer your question. But we have, on top of everything you've said, we also have the allegations back in place. The anecdotal evidence. Why don't you start with the question and then come back to everything else. So I guess what I would say is, at this stage, we're at the complaint stage. Our complaint was dismissed. If we have plausible allegations, then our case should be able to go forward, actually must go forward. And we should be able to prove our claim. And we already have statistics that show that this statute appears to be very narrowly focused on a tiny subset of the Virginia population. We believe that's the homeless alcoholics who are our clients in this case. So the answer to my question is, yes, your Eighth Amendment claim depends upon that premise. It depends upon the premise that, yes, that this is the status. Those who are prohibited from engaging in this behavior have that status and can't avoid that status. If there are other people who could be caught up in it but have the choice to avoid it, then it still would be an Eighth Amendment violation. Because the designs target our clients. And the fact that there's some people who just by choice wind up being part of that class, that doesn't take away from the design to target our clients. I gather that, over here, I gather that your proposition then would attack a statute that says a 15-year-old is in the status of a juvenile. And the law prohibits a 15-year-old from drinking. And the state goes after these high school parties that they're targeting 15-year-olds. And, therefore, that's an Eighth Amendment violation. I mean, 15-year-olds are status. Uncontrollable status. So somebody who drinks when he's 15 years old violates the law. Well, I guess a couple points. First, the prohibition on juveniles under 21, that's universal. It's not trying to separate. It's not universal. It's to people who are under 18. Right, but it's universal. That's a status. Among those under 18, it's not trying to separate out based on a particular status, like an addiction, as we have in this case. Well, an addiction, a person who's addicted is prohibited from doing certain things, too. A person who's committed a felony is prohibited from doing things. A person who's too young. Right. A person who's mentally disabled is prohibited. Our laws classify people by status. They don't criminalize the status. They criminalize conduct by people in that status. Right. So a 15-year-old is not criminally liable because the person's 15. Again, just a minute. Okay. The person is criminalized when that 15-year-old drinks. And in this case, the interdiction imposes the classification. And if that person who has been classified as a habitual drunkard, and that's how you define your class, only the habitual drunkards. If that person drinks in public, possesses in public, then that person violates the law. It's sort of straightforward on the face of the statute. I disagree with that. I mean, in your example, that person isn't compelled to drink by a disease. And again, it also is applying to everyone. That's totally different. That's an involutional type of thing. Right. That's what we have. That's exactly the point here. Well, that means every drug law, every time we convict somebody for drugs, we're in the same problem, right? No. It's fundamentally different. When you have a criminal prohibition that's generally applicable, the state has made a determination that that conduct is sufficiently dangerous that it's prohibited for everyone. Everyone is on the same footing. Everyone is prohibited from doing it. The problem here is a very narrow class of people is being branded, and the behavior is only criminal for them, and they can't control that behavior. In this narrow context, it is a status crime. It's effectively a status crime. Our clients are being repeatedly prosecuted for being homeless alcoholics. To the degree that this whole notion is targeting, you can look at it as not just they're not targeting just a group. They are targeting a certain species of behavior, and that is the public drunkenness and all its manifestations. The state is trying to execute its basic powers under our federal system of being able to control the deleterious effects of alcohol. One of the things we know, and it goes way back to the temperance unions in the 1920s, is that alcohol fuels some very undesirable behaviors. Among those undesirable behaviors are domestic abuse and assault. Among those undesirable behaviors are sexual assaults on campus. Now we're finally beginning to have some awareness of the dimensions of this problem. Why would we pick this particular moment to hinder and impair the state's two-step effort, which follows a pattern in many jurisdictions, of trying to deal with the deleterious effects of alcohol and restore, frankly, to women some degree of physical safety and peace of mind? Because we know, and the Commonwealth of Virginia knew, and its legislature knows today, that some of the worst crimes of violence against all people, and against women in particular, are fueled by alcohol. And this is one of those things that the statute is not targeting people. It's targeting the ill effects of alcohol. Your Honor, I respectfully disagree. First of all, you mentioned other states. We think, actually, Virginia is the only state that targets alcohol. We're talking about the general power of the state under its police power. And the state has plenty of tools at its disposal to prosecute dangerous conduct. What we're talking about here are sweeping people off the streets because they're sleeping on a park bench, because they're walking down a Walmart aisle. Excuse me. Can you put together for me your best argument that this statute targets homeless alcoholics? Because I'm really not getting it. So it's a combination of factors. And the first factor is, as I mentioned before, that historically the term habitual drunkard has been associated with homelessness and vagrancy. And there's literature on that. Secondly, the state here has asserted in its brief and its motion to dismiss that this statute is designed to target public drunkenness, public behavior. Aren't you really talking about discriminatory enforcement? So I'm having a conceptual problem that I hear underlying a lot of the questions. And that is, you seem to think that homelessness is a status that one opts into, that one has a choice. One can go home, go to a home. The fact that one has a home to go to takes them out of the category of persons affected by this statute. It is simply, and this is picking up a little bit on Judge Sackler's question, that's just not anywhere. Well, I think you can, again, you can read it into the design of the statute. Well, you can, but there's no reason that you have to, is the problem. You have certainly read it in. But it's not necessarily or unnecessarily implicit. Well, I think, again, I think if you look at the historical association of the term. Could you let us finish our question? Thank you. You certainly, I'm not taking issue with the fact that you could read it that way. I'm taking issue with the fact that for, in a context where we do not, where laws are presumptively constitutional. You do grant me that, that we do assume that legislatures act constitutionally. That in that construct, in that context, we do not necessarily have to assume, as you would have us assume, that that's the force and effect of the law. Thank you. I'm through now. Okay, thank you. And I guess what I would say is, again, remind the court that we are on a motion to dismiss. At this stage, our claims have to be evaluated as to whether they're plausible or not. And we believe, based on the history, based on the way we've alleged the statute is being enforced against our clients, based on the statistics we provide, again, right now we only have publicly available statistics. But what those statistics show is, with respect to the problem of alcohol abuse, 500,000 alcoholics in Virginia, a minute number of people are being interdicted under this provision, and I think it was roughly 1,200 in a nine-year period leading up to the filing of our complaint. Ms. Markowitz, excuse me for interrupting, sir, but I'm curious. It seems to me that if you're not arguing a disparate impact, that you're touching on the issue of vagueness, that anybody can be an habitual drunkard under this statute. And you argue that in your complaint. And it seems to me that that is a great evil, arguably, with this statute, because what is an habitual drunkard? You seem to just assume it's somebody who's always drunk. Would it be somebody who gets drunk every Saturday night? Would it be somebody who gets drunk just when they get in fights? Who knows what an habitual drunkard is? And you seem to be reading that out of your case. Could you tell us why you're reading that out of your case? Well, I guess what I would say is you're right that there certainly are a lot of questions. But this court in the Fisher case did define habitual drunkard, and there's a Virginia Court of Appeals case that has applied that definition as well. You want to actually overrule Fisher, though, don't you? Yes, we do, we do. If we overrule Fisher, what happens to the driver? The driver supports you straight up, doesn't he? Yes, the driver would support us straight up. We haven't asked the court to go. Well, what happens if we overrule Fisher? Does that resurrect driver? Well, because Fisher purported to overrule driver. It could. That's called the district court, and Fisher said driver. That's correct. It could, but I don't think you necessarily have to go that far. As we explain in our briefs, we think there is a significant distinction between a generally applicable statute. So you've got straight up precedent in this court. If Fisher goes away, you've got a straight up precedent in this court that supports you. Yes. And by way of driver, written by Judge Brian the Elder. Yes, and that was a public intoxication case. So that absolutely does support us. And we are also supported by the views of five justices in this case. Of course, and in fact, we can overrule driver, too, if we want to, but that's precedent. The precedent would be in your favor if Fisher goes away. Mr. Marcus, let me – I'm over here to your right. I'm sorry. I know it's a hard thing to see where we are. Let me assume we don't agree, and I'm not coming to any conclusion with your Eighth Amendment argument. Do you agree that the equal protection argument is a rational relations test? We don't, Your Honor. What's the basis that it would not be a rational relations test? Under the Skinner case, which is a Supreme Court case, which is still good law, the Supreme Court said that where you have two groups that are similarly situated and the punishment for those two groups is disparate, is a different punishment for two groups. In that case, it was forced sterilization. It gets – that kind of statute gets the most exacting scrutiny as though you're dealing with a suspect class. So that's the principle we're relying on. A plurality of the Supreme Court relied on that principle in the Fuchsia case, which we also cite in our brief, that said freedom from physical restraint is a fundamental liberty interest, and when you disparately punish two groups of similarly situated people, that implicates that interest, that fundamental liberty interest, and it should be subject to strict scrutiny, even assuming there's no suspect class. And the state doesn't even try to defend the statute under that scrutiny. I would also add that if the court disagrees, as we say in our brief, there should be the most – if you're going to apply a lower-level review, there should be the most careful scrutiny given to, you know, careful, rational, basic scrutiny, whatever you want to call it, because we're dealing with a group with a disability, alcoholism. It's recognized as a disability under the American Disability Act. Let me ask you a question I forgot where we are because we've had a lot of discussion. As I see the judicial choice in this case, what we have is clear law that I think we all agree you can't punish a person because of their status, and being a habitual drunkard is a status. You can't punish them for that. I think most of us agree to that. Not all of us. The Supreme Court seems to agree. So beyond that, the question then becomes if a person who is homeless and owes your clients is out in public drinking, is that act part of the status, or is it an independent act? And I, you know, I heard Judge Niemeyer's reference to the 15-year-olds, and, you know, in terms of status, this is a different type of status, but at the same time, that individual is not prohibited. In other words, you still could prosecute him for an act that doesn't relate to the habitual drunkenness. In other words, if he robbed a bank or if he did some other things, you could punish him. Your argument, as I understand it, and the choice before us is whether we're going to say that here's a person that we all accept as a habitual drunkard. Habitual drunkards can't stop drinking. They have alcohol. They can't help themselves. They also, by the definition of your client, they don't have a home, which means it's going to be public whenever they possess it. Given those facts, then the choice is do you think that if this type of individual in the public has alcohol, is that an independent act, or is it because he's an habitual drunkard, the status of it? And that seems to be the choice here more so than do we fall into the other aspects of the Constitution? Yes, Your Honor. Can I answer that? Yes, you may. Two points. One, in this context, it's not an independent act. It's inseparable from the status. These individuals are compelled to be in public, and they're compelled to drink based on their disease. So it's inseparable. It's not an independent act. And what reinforces that is they're the only group that's prohibited from doing this. No one else, anyone else can avoid the habitual drunkard designation and engage in this conduct. It's not prohibited. It's prohibited for the select, very, very select, very long period of time. So what about homeless people who are addicted to drugs or homeless people who are pedophiles that I know say that that is a disease or disorder, that they are compelled to prey upon children? What about that, then? Is that the next case? Well, Your Honor, I think you have to take each statute sort of as it's set up for me to evaluate which sort of side of the line it falls on. But, again, if only a particular group is being singled out and with no prior conviction, it's well settled that if the statute requires prior convictions, you can impose lots of restrictions. That's a confusing answer to me. It seems to me what you have here is something that's perfectly legal. Possessing alcohol, being a pedophile, that's illegal. I don't care what your status is. I don't understand your answer. Why don't you just answer the question directly? And that's another reason. A better reason. Counsel, you might want to help. Maybe I can help you. Your time is up. Okay. I'll reserve the rest of my time for rebuttal. Thank you. Mr. McGuire? Good morning, Your Honors, and may it please the Court. Matt McGuire on behalf of the affiliates. The U.S. Supreme Court made clear in Robinson v. California that the state's authority to regulate the use of dangerous and habit-forming drugs was too firmly established to be successfully called into question. The same is true of alcohol. All that Virginia is regulating here is conduct related to alcohol use. Alcohol is not a dangerous drug, is it? It can be, Your Honor. It can be, but it's not, is it? No one has declared that in any state yet, I don't think. I mean, the Vol State Act is well past this. If you're a certain age, you can drink alcohol. I think many people do. Well, it's a choice states can make, Your Honor, and no state has completely prohibited it. Yeah, but you started off maybe with a glass jar. You talk about Robinson and drugs. But consuming alcohol as an adult is totally acceptable. As a matter of fact, people are calling you a sociable. Well, Your Honor, but it can be dangerous. Absolutely. It can be if you're driving a car and you're intoxicated or you're doing those kind of things. My good friend Judge Wilkerson talked about abusing people. Yes, it can be. But the act of drinking alcohol is certainly accepted in American society. You have to agree with that, don't you? Your Honor, in general, yes. But, again, what the Commonwealth is doing here with the habitual drunkard designation, and some of the questions seem to align that with alcoholism generally, that isn't what it is. If you look at the statutory text, it says, has shown himself to be. There is a conduct related to the consumption of alcohol. Well, what is an habitual drunkard? The definition that is sort of given by Fisher was used by the Porterfields and Jackson. I'll just give you a straight answer, Judge Feeney. It's someone who is consistently and repeatedly becoming intoxicated to the point of impairment who causes harm to other persons or their community. Okay, but where do you find that? Take it out of Fisher and Jackson. So it's just sort of there. It's there, Your Honor, but it's important to note that my friend on the other side had a void for vagueness challenge in the district court. I know they did, and that does give us jurisdiction to consider that. We have the discretion to consider it since he raised it in the district court. But, Feeney, you can consider it, but normally this court treats issues that are completely abandoned on appeal. They didn't brief it at all. Well, now, wait a minute, though. It was in the panel. They said they weren't raising it, but in their petition for rehearing in bank, they did not say that they were abandoning it. But, Judge Feeney, if you go back and look at the opening brief of the appellant filing. Oh, I understand that. Yes, Mr. McGuire, but if you look at their petition for rehearing in bank, because now the panel proceedings are gone, now that we're in bank, there's nothing in that petition for rehearing in bank that says that they aren't asking the court to consider vagueness, is there? Judge Feeney, there's nothing in the petition for rehearing on bond. My understanding of this court's rules is you rely on the briefing from below, and that's the court asks for additional briefing by the parties. Well, your view is this is a short-circuiting of the panel process, and normally we depend on panels to air these issues for the in-bank court. And in the brief before the panel, it says count five alleges that the interdiction statute is vague, unconstitutionally vague. District court dismissed this count, and plaintiffs do not press this claim here. Then they repeat the waiver. District court on footnote nine, the district court additionally rejected plaintiff's vagueness claim. Plaintiffs do not press this claim here. And I realize the panel opinion is vacated, but we also rely on the panel process to air the issues and formulate them for the in-bank court. The panel was never given that chance, and then those two footnotes, there's a waiver about as explicit as it could possibly be. Judge Wilkinson, I agree with that. And it's also, the panel didn't have a chance to consider it. The Commonwealth didn't have an opportunity to really brief it before this court. What panel are you talking about? The panel that heard this case initially, Judge Wynne. That's vacated. It's vacated, Your Honor, but they didn't have the opportunity. What do we care about what they did here? From my perspective, Judge Wynne, for the Commonwealth. I understand from your perspective, but from our perspective, it's vacated. Vacated means it doesn't exist. That's correct, Judge Wynne. Then why are you talking about something that doesn't exist? Because the way that I understand the panel process and the en banc process, Judge Wynne, correct me if I'm wrong, is that when the petition for a hearing en banc is granted, this court proceeds on the briefs that were filed to the panel unless the court asks for additional briefing, which is certainly the court's right, and we would have been happy to address vagueness if that had been a question the court wanted to have addressed. Don't you think you should just address this as anew, as though you were talking to us in the first instance and just move forward? Judge Wynne, other than providing the definition of habitual abunder, which I have, which I think is recognized in Virginia law and isn't void for vagueness. What is the definition of habitual abunder? The definition that we rely on, Your Honor, is the one from Jackson v. Commonwealth and Fisher v. Coleman. It's essentially someone who has repeatedly and consistently become intoxicated to the point of impairment and caused harm to other persons or to their community. How do you define repeatedly and consistently? Your Honor, what we think – I don't have a clear definition for that to answer the question directly. It's a little bit vague if you don't have a clear definition. Your Honor, it is admittedly a little bit vague, but what is key to the – Well, if it's a little bit vague, isn't that like a little bit pregnant? I mean, if it's vague, there isn't a basis for somebody to know and comport themselves to stay outside the boundaries of the prohibition. Let me tell you why I'm worried about it, because not only is it, to my mind, we have a vagueness problem, but there's a baked-in criminal enhancement in this. And this is what I'm interested in your response to. A person who is interdicted and later found to be drunk in public is subject to a Class I misdemeanor and imprisonment for one year. A person who is drunk in public and has not been interdicted cannot serve one day in jail. The exact same conduct. So there is a criminal enhancement essentially baked into this on the basis that somebody is determined by somebody to be sort of an habitual drunkard. Do you see what I'm saying? I do. The exact same conduct can put you in jail for a year under this vague language when if you were found simply to be drunk in public doing the exact same thing on the streets, you could only get a $250 fine. Now, why isn't that a problem with your statute? Judge Keene, can I take it in two parts? I'd really like to try to persuade the Court on the vagueness point a little bit. Okay. Why don't you do that, but first address the question. I sort of understand it as a two-part question, Judge Mott. So I can take the piece of this penalty enhancement in two parts, which is one, that's part of the statute. They haven't challenged here the public drunkenness provision. That is not part of their claim. They're just targeting the possession or consumption aspect, which, Judge Keene, I think has the same problem that you've identified. It increases the penalty, which, to Judge Gregory's point, normally people can possess and consume alcohol without criminal penalty. And this all goes to vagueness. How can you hold somebody to a penalty of one year incarceration for the exact same conduct, based on them being habitually drunk, which you say is sort of intoxication? How can you hold them to one year in the jail for that conduct when the exact same conduct will only net you a $250 fine if you haven't been called sort of an habitual drunkard? Judge Keene, because it's not somebody calling you a habitual drunkard. It's a Virginia Circuit Court judge who has heard a petition, who has seen evidence that your conduct, you've shown by your conduct, that you are a habitual drunkard. But you agree you don't have to be convicted of any crime to be an habitual drunkard? You don't have to be convicted of a crime, Your Honor, but the way this comes up, and the sentence is quoted a lot, and I do want to clarify the record on this for my friend on the other side, what the Commonwealth said in its motion to dismiss, it's not that it targets people in public. What the Commonwealth said is that the conduct targeted by the Virginia Interdiction Statute is possession and consumption of alcoholic beverage by individuals who have a demonstrated history of public drunkenness. Let me address for just one minute this vagueness notion. The Papakristou, which is the original vagrancy, the sort of landmark vagrancy case, that was a criminal statute, and most of the vagueness doctrine has been applied in the context of criminal prohibitions. The whole point of this two-step process is that the first step is not criminal. It's civil. And so to get at a vagueness problem here, you have to adopt a theory of civil vagueness, and that goes far afield from the line of Supreme Court cases from Papakristou down onward, looking at these vagueness challenges. They have to do with the lack of notice for criminal prohibitions, criminal prohibitions. And if you go to the notion of civil vagueness, that opens up so much. There are a whole lot of civil statutes that impose liability, including punitive damages, for example, that if we're going to apply civil vagueness doctrine, will be under assault. What about a statute like the Sherman Antitrust Act, which has a certain stigma attached to it, because if you engage in a conspiracy and a strain of trade, that's not good? Or what about the securities fraud statutes? When you go down the road of civil vagueness as opposed to criminal vagueness, you are opening up so much, because all kinds of statutes that impose one kind of civil designation or civil sanction or civil liability, they could all be open to a certain vagueness challenge. I don't understand where this theory of civil vagueness would end. Your Honor, what I can say is that Your Honor understands the statutory scheme correctly. It is a civil interdiction order, which we think isn't intended to continuously lock up individuals. The point is it's a prophylactic measure. Well, what if it has the baked-in criminal enhancement, though? How can you say it's purely civil? If the consequence is to elevate to a year in jail, it's not purely civil. If it has that baked-in enhancement for the exact same conduct, how can you just simply say it's civil? I don't think it's really baked-in in that way, because there's an act that asks for it. You have to violate the law in order to incur the criminal penalty enhancement. Same for the drunken public person doing the exact same thing, and they can't go to jail. But they can only get a $250 fine. But that's because, Judge Keenan, they haven't shown themselves to a Virginia Circuit Court judge that they can't use alcohol in a safe and responsible manner. And it is important to note that the statute isn't limited to people who are in public and they happen to be seen by the authorities. It would cover situations where the police would call to the house for domestic violence. What was that? You just said you can't show Virginia that you can use alcohol in a safe manner? That's the whole basis? So tell me in the context of power, which is a 4-1-4 decision, which of those decisions do you consider decontrolling? What do you think the rule is? It appears to me the power may address just what you brought to mind there, and that is if a person commits an involuntary act that is as a result of an unavoidable consequence of their status, that's not permitted. That's the narrowest ruling of power. Do you disagree? Judge Wynne, I do disagree slightly. I agree with you that the narrowest— Tell me the opinions in power that you consider to be controlling, and where would you get the law across in power if you have a 4-1-4 decision? So, Judge Wynne, I think at the outset you disregard the dissent. What Mark says, you look at the justice who concurred in the result in the majority. Did Mark say that? It does, Your Honor. How about to the extent that that one opinion agrees with the dissent? Judge Wynne, I would agree that there seems to be some similarity between Justice White and the dissent. But do you disagree if the one agrees with the four that's in dissent, that that's not controlling law? Correct, Judge Wynne, that is our position. Even though that's the majority? But they didn't concur in the judgment of the court. If you look at Mark's self, Mark says, quote, the position taken by those members who concurred in the judgment, the dissent does not concur in the judgment. If you look at the Mark's opinion itself, and it determines what the controlling opinion was in that case, they don't talk about the dissent. Well, why don't we look at what the Supreme Court has done? Because the Supreme Court in 60 years has never indicated that the Status Act distinction of Robinson has been repealed. And, in fact, they cite to Robinson regularly. They did it in Atkins v. Virginia, Solon v. Helm, Rummel v. Estelle. And when the Supreme Court has cited to Powell, it has invariably cited to the four-judge plurality opinion in Powell. It did it in Clark v. Arizona, Montana v. Illinois, Medina v. California, Abraham v. Wright, Marshall v. United States, O'Connor v. Donaldson. The Supreme Court has never indicated itself that Robinson was overturned or cut back on. And when it cited to Powell, it's been to the plurality opinion. And I don't understand exactly what authority we have to take liberties of this sort with a Supreme Court opinion that has stood for 60 years, that the laws have almost uniformly followed, and that the Supreme Court itself has cited as good law. Well, that's another judicial choice we have here. That is, do you accept Robinson, which is a 4-1-4 decision, that the four is a plurality, or do you follow what I perceive to be democrat rule, and that is that the single judge who's concurring is the narrowest opinion. And the narrowest opinion is where it agrees with either majority or the dissent in that case. That's a judicial choice. Judge Wilkinson's position presents one perspective of it, but the other perspective, I do not think the Supreme Court has ignored the fact of what is actually a majority of the case, where that one judge, was it Justice White? It was Justice White. Justice White agreed either with the majority, written by Justice Marshall, or the dissent. Judge Wynn, so I think you're right. It is a judicial decision for this court to make, I don't think it's answered so easily as to say, you know, you just follow that the Supreme Court has quoted a few times from the board, and therefore, whatever Mark says doesn't apply. Well, Judge Wynn, I do think Judge Wilkinson is right to argue that Powell is sort of a faithful application of Robinson, but Elmer Marshall in particular. Robinson gave us almost nothing, and that's why we needed Powell. Robinson basically gave us the idea of the status, but there's really nothing expounding from Robinson that allows us to make an informed decision here without Powell. Well, Judge Wynn, I think Robinson makes it actually very clear that the Commonwealth of Virginia has correctly declined to criminalize status. If the law says you're a designated habitual drunkard, that act, that existence, that status is criminalized, that would be a problem for all the reasons. And that we all agree on, the status. It's the question of whether these are involuntary acts that arise from conduct that is unavoidable as a result of the status. But that's what we can get out of Powell. Well, that depends on how you read Powell, Judge Wynn. Can I ask you a question about what your brief says about how to read Powell? Your brief, as I understand it, says we do have to follow the white concurrence and find the area of agreement between the white concurrence and the majority. And you believe, so assuming for a minute that that's the right approach, then the rule is that the offense has to involve at least one volitional element. So what is the volitional element in this case? The possession or consumption of alcohol. But we're on a motion to dismiss, and I believe the pleadings say that the plaintiff, that is not volitional for them. Judge Harris, because the way we define, it's how you define volitional acts and the way we would define volitional acts were based around the irresistible impulse in Virginia, which is exactly, and I would like to quote this language. So I'm sorry, so your position is you win because it is a volitional act for these particular alcoholics who have pled that they have no power to resist using alcohol. It is nevertheless volitional for these alcoholics to drink. Judge Harris, our position is unless they prove the irresistible impulse defense as part of their criminal case, it constitutes a volitional act for purposes of the Eighth Amendment. Can I just ask one, I'll let you go on one. If I disagree with that, is there an alternative ground on which you might win this case? Your Honor, I think it comes down to how you read Powell, and what we try to do in our briefs in candor to the court is we believe the court should try to ascribe meaning to the U.S. Supreme Court's decisions where it can. We're for that. I'm just voting for the brief. The court in 18 Massey Cole, this court sort of sets out how it views marks, and Judge Wynn, I want to point this out to you. If the court decides to adopt the position that Justice White plus the court said, you probably need to also discuss 18 Massey Cole and sort of push back on the idea that you only look at the majority and you look for the common reason between the two. And Judge Harris, your question, the problem here is there's very little... When you use the word majority, are you talking about that four? Yes, Judge Wynn. Four out of nine is a majority in your opinion. No, Your Honor. You have a five-justice majority who concurred in the judgment in Powell. And what 18 Massey Cole from this court in 2002 says, you look for the common reasoning between the plurality and Justice White. What makes Powell so difficult is there's very little common reasoning between the two opinions. So, Judge Harris, you try to offer a definition of volitional act that would ascribe some meaning to that case. Well, why does the Supreme Court repeatedly cite to the plurality opinion in Powell? And why did Justice White say explicitly, I can't reach this question of non-volitional conduct because the defendant in that case had never shown that he could avoid being on the streets. He couldn't avoid being on the streets. I mean, you know, one thing I want to mention, it's been brought up as a motion, this is resolved on a motion for dismiss and that we should remand in order to collect all kinds of evidence about how the program is working. And I wonder, doesn't that essentially turn the district court into a legislative chamber because the empirical judgments about how the program is working or not working or what the effects of the program are or what the effects of the program are not, those are legislative matters. And legislatures have a chance and should have the chance to evaluate their programs and how they're working on an ongoing basis. And if we remand, we're asking the district court to find legislative facts, not litigated facts, but legislative facts. And we're turning it in the district court into a legislative chamber. Isn't that the problem with the remand here? Is it we're usurping the role of the General Assembly? Judge Wilkinson, we agree this is a legislative policy decision and it's important for the court to also just be aware that the General Assembly of Virginia has reconsidered this statute in a number of consecutive years, including this year. There's a bill that I believe has actually been heard in committee today that would repeal large portions of this. And so it's a component of what Virginia does as it relates to homelessness or alcoholism or any other societal ill. Here is the amicus brief file. It points out that Virginia has other programs in addition to this, housing programs and other alcohol-related treatment programs. It isn't true that Virginia is simply rounding up alcoholics and putting them in jail and branding them with this tag, which is what my friend would ask the court to do. And don't we have to accept that at this point, what they allege that? I mean, it's not our job to legislate, but it's also not our job to wait for people to change the legislation either. The question is existential now is whether there's a violation. And vagrancy laws, for example, throughout the South historically, did they mention race at all in terms of the enforcement or the violation for vagrancy? Judge Reagan, I think generally speaking, no. But how was it enforced? I mean, many African-Americans went to jail just for standing on a corner, right, because they didn't have a job. They didn't have a home. That wasn't their town. So we're looking at this and going back to Justice White. Justice White said that there they had not established that it was non-volitional. And, therefore, if they could, then it would be the same as a status offense. Why would we stop this case now at this junction when they say we do have evidence to show that this class, it is something that they just can't say, stop drinking? Judge Gregory, for a couple of reasons. Why would we stop it? Because the Eighth Amendment generally speaking says very little about substance of state criminal law. So Robinson sort of stands with the case and takes the court to follow Robinson. My second point on this is they could raise exactly what they're raising to this court in all of their criminal cases in which they have appointed counsel and they're entitled to full penalty of criminal rights. And the reason why the irresistible impulse defense in Virginia is defined exactly as they're claimed. It is the jury instruction from the court. There are raises in step one and step two. It's either the criminal prosecution or the interdiction determination. As part of the criminal prosecution. It's too late then. Once you're interdicted, that's the case closed. The question now is did you possess? Did you drink? Judge Gregory, that's why this jury instruction is so important. It's a quote from 2010 from the Virginia Supreme Court. Where the accused is able to understand the nature and consequences of his act, which I understand my friends would say they do, and knows it is wrong, it is under the law, but his mind has become so impaired by disease that he's totally deprived of the mental power to control or restrain his act. That is exactly the claim here. And so what we would ask is rather than expand the Eighth Amendment and expand Robinson, this already is taken care of in Virginia criminal law. They can raise this claim as part of their criminal cases, and whereas on the civil side you don't have an attorney. So they have to go to the McNaughton rule and go back to that insanity? No one pleads insanity for a misdemeanor because to win that is worse than to lose it. You know what I mean by that, don't you? It's better to do 12 months in the out than to be declared to be insane and never get out. It is a pure defense, Judge Gregory, to the charges, which they have the ability to bring. And so we think they have to put on expert testimony in the existing court that this court ever remanded to prove that they are completely unable to control their actions. They have to put the same testimony on in Virginia State Court. And we think that's the better way to handle this case than to expand the Eighth Amendment. Because there are concerns that have been pointed out by the court and some of the questioning about the slippery slope that's here, and I don't need to walk the court all the way back through it, but one example we gave before is the protective order situation. It's a civil court order to issue a protective order to protect somebody in the Commonwealth of Virginia. And that civil order, which can be issued ex parte, carries criminal penalties if you violate it. And so you could easily have somebody come forward and say, I have a disease, I have a mental illness, I am compelled to follow this person, whereas the rest of the world is free to engage in that conduct. But this two-step model is widely used, and it's basic to the police power that a state can calibrate restrictions on acts, restrictions on behavior, to the degree of risk that is posed. And the domestic abuse situation that you point out with temporary restraining orders follows that two-step model, and restrictions on firearms purchases follows that two-step model. And there are mild criminal sanctions, or as in this case, civil designations that locate a degree of risk and then proceed from locating the degree of risk to calibrating the level of restrictions on behavior. And that's followed in criminal statutes and civil statutes with that two-step model of trying to head off truly bad behavior before it actually occurs and to calibrate restrictions on behavior to risk posed by historic behavior. That's just Christopher the Mill in terms of the state legislative process in all kinds of contexts. Judge Wilkinson, that's what we think the interdiction statute does here. And I would like to touch on some of the statistics. Can I just follow up on that for one second and to go back to my friend, Judge Keenan's question? Are you familiar with any other, Virginia, since these two-step procedures are so widely known to everybody and I'm not familiar with this baked in enhancement for non-criminal conduct in the beginning, a criminal enhancement. I just didn't, you have exactly the same conduct and you don't have a penalty where you would go maybe to jail for a year. And then because of the interdiction statute, exactly the same conduct, you do face a penalty for one year. Judge Mons, I'm not aware of one immediately. I don't have one in front of me. I think that we would know about it. We know a lot about criminal enhancements because of all the federal statutes dealing with them, don't we? Judge Mons, what I would say about this situation and why it would likely be used here is because of what Judge Gregory pointed out to me at the beginning of the argument about the sort of unique nature that alcohol functions in our society, both that it is socially acceptable as a general matter, but it carries a high degree of risk. I take your point on that, but driving a car also imposes a high degree of risk. I mean, I don't really see that as a particularly, that drinking alcohol is any more dangerous than driving a car. Certainly when I'm driving a car, I'm terrified of these other drivers. Judge Mons, I mean, the Constitution recognizes that alcohol is different. It does give the state near complete authority over how to regulate it. We do think that explains... States regulate driving too. There are far more restrictions, I would think, on our ability to do so. Well, I don't know. You have to have a license to drive a car. You don't have a license to drink. Counsel, why wouldn't you... Give the example to Judge Mons of 922G4, right? The adjudication of a mental defect prohibits your possession of a firearm, right? I mean, that's what 922G4 stands for. It's a two-step process. If you've been adjudicated anywhere, state or federal court, having a mental defect, whatever that means, we could talk about the vagueness there, but that has not been a problem applied otherwise because it's a civil proceeding. And in that context, you're criminalized, sometimes quite significantly under 922G4, for having possessed a firearm no different than the legal possession of alcohol. Judge Richardson, my apologies for not providing that answer. I actually understood Judge Mons' question to be about Virginia law specifically, of which I just happen to be more familiar than the federal criminal law, but that does sound like what we have here. Well, if it does, then why is it an unavoidable consequence that someone with a mental defect is going to possess a gun? How does that follow? Clearly, if you're an alcoholic, you know you're going to possess alcohol. It's an unavoidable consequence. But how is having a mental defect, possession of a gun, an unavoidable consequence of having a mental defect? Judge Wynn, in some sense, my answer is a product of the nature of which this case is coming to the court. Doesn't that distinguish that from this case? Maybe, Your Honor, but what if somebody came to court and alleged that their mental illness compelled them to possess guns? There could be somebody out there who has a mental affinity for them, and they would allege that, and we'd be right back here. You would have to prove it at trial, and here they would have to prove the compulsion of the court were it to remand the case, because we do think that's at most what can happen here is a remand to see if these particular— But we wouldn't be talking about individuals. We wouldn't be talking about a class of people in that particular— unless we went and had psychiatry identify there is a group of people out here who just have a mental illness about possessing guns, and as a result of the mental illness of possessing a gun, which probably could be a very broad definition. You understand that, don't you? Possessing guns, if you think that's a mental illness, you could spread that pretty much, and then the possession of it alone would be criminalized. That's not unavoidable. That's sort of the same situation here. They've alleged a class. They haven't proven a class. There isn't currently a class here yet. It's still individuals. In that case, it would be individuals, but they could try to prove a class. They would simply have to make— We do accept that they are homeless people, and then homeless people, by definition, means they don't have a home. Don't we? That is certainly what they have alleged, Your Honor. I have no doubt about that. And that's the group of people who's before us right now. Those are the plaintiffs before us, and they're saying it's because of that very status that they are at the habitual drunk status, coupled with the fact they're homeless. That's why it's an involuntary act that's being committed as a result of an unavoidable consequence of being a habitual drunk. Judge Winn, that's their allegation, but I don't understand, then, why they haven't challenged the public drunkenness or intoxication element of the statute because it covers that exact same claim. You would agree with me, right? You think the 922-G4 would be the same example that Judge King gave you? In that case, a prohibited person, in terms of being charged, would have the same penalty, wouldn't they? Judge Gregory, I have to, because I don't know that much about 922-G4, so my answer to Judge Richardson was down to the point. Well, Judge King was talking about someone who would be guilty of a crime, which would be drunkenness in public or drinking in public, then facing that. But then you'd have to be a prohibited person to be a comparator there, wouldn't you? It's not just the fact, yeah, you out-label that, it makes you prohibited, but a person who would stand criminal punishment would be just like you, a person prohibited. But here, you'd be charged as a person possessing alcohol, and you could only get a $250 fine, as opposed to an interdicted person would be up to 12 months. So it's not quite apples and apples in that example. Judge Gregory, I have to take your word for it, because I don't know enough about the statute. You don't need to. It's just that Judge Richardson gave you the example, and you thought that was a complete comparator, but it's not, really, is it? Judge Gregory, if I said it's a complete comparator, I misspoke. I said it sounded like it. That's what I thought. I suppose you can have a situation, too, where the civil designation is used to resolve any ambiguity in the criminal statute, because the whole idea of vagueness is to put someone on notice of impermissible behavior and behavior that can be criminalized. And here, the designation serves that very purpose. In other words, the civil designation saves and rescues the criminal prohibition from vagueness by putting the individual on notice that further behavior can be subject to criminal sanctions. And it puts the individual on notice without the imposition of criminal sanctions itself. Judge Wilkinson, that's what the statute does, and that goes to my point from earlier. The Commonwealth's goal here is not to just lock up these individuals. It is to try to encourage people to stop abusing alcohol and to get treatment. I see my time has long since expired, Judge Gregory. If there are further questions from the Court. Thank you, Mr. McGuire. Mr. Malkus, you have some time reserved. Thank you, Your Honor. This Virginia interdiction statute is materially indistinguishable from the statute invalidated in Robinson. Virtually all Virginians of age are able to engage in this conduct, in the possession of alcohol. The only ones who cannot are those who have been designated habitual drunkards, and the only people who cannot avoid the habitual drunkard designation are homeless alcoholics. That's our claim that punishing a homeless alcoholic is no different from possessing alcohol over and over again, which is what we allege in the complaint. There's no meaningful difference. The state talks about, well, you can bring up the irresistible impulse defense in individual cases. The problem with that is it doesn't address the systemic problem. Our clients are getting arrested, prosecuted multiple times in one year, so for every single case to try to bring that up, this is the larger picture. This is a status crime. I just want to go back to sort of the very first couple of sentences out of your mouth, and it was that only homeless alcoholics can avoid being interdicted. Does it matter whether the only is right? Isn't it sufficient for your claim that whatever the reach of this statute, whether or not it might affect people who are not homeless, it is clear that as to homeless alcoholics, there is no volitional conduct here. They have to be in public and they have to drink. Isn't that enough for you to win your case? Why do we need the only? Well, I think it is. I mean, it is enough to win our case and certainly enough to win under the approach and the five views in the Powell decision where Justice White, along with four dissenters, made it very clear that if someone could show that they were homeless and addicted to alcohol, they couldn't be convicted of public intoxication, which is a generally applicable crime. And that's an open question. And that, so we certainly under that approach, yes, we win under that approach. Even under the state's reading of the White concurrence and White's narrow agreement with the majority plurality, Justice Marshall's opinion, the state understands the rule to come out of those five justices either must be some volitional conduct. And I understood that your argument was that as to your client, there is no volitional conduct. And I just don't understand why that has to be true only as to the client. I guess what I'm saying is if the court could adopt a narrower principle, that is enough for us to win our case under the principle you're articulating. But the court could adopt a narrower principle and say that in this case, this clearly does only trap the homeless alcoholics. And therefore, there are no concerns about applying this, you know, that there would be some slippery slope would apply to allowing a compulsion defense to a generally applicable crime. In your resistance to that, I appreciate that because that was sort of the conceptual difficulty I was having with your argument earlier on. In your resistance to the distinction that Judge Harris is making, can you elaborate on that a little? What makes you nervous about what her suggestion? Right, because mine would, the, what I, really, I'm just reading from the state's brief. There has to be something volitional, even on the narrowest reading. And I don't understand why the homeless only thing helps, sort of matters to your position because either way, this isn't a generally applicable law. That's correct, Your Honor. It's narrowly targeted either way, whether it only applies to homeless alcoholics. Or whether some other individuals are sort of swept into the net. It overwhelmingly applies to the homeless alcoholic population. The difficulty you encounter if you buy that argument is then you are raising an affirmative defense. It doesn't go to the invalidity of the statute. In other words, the statute would address this conduct. And if generally the statute allows prosecutions, then your client would have to make the affirmative defense that it wasn't volitional and carry the day on that and meet the standard that Virginia's defined for that purpose. No, I thought that the input of the question was it wasn't constitutionalist to anyone. Well, he's just changing his mind. No, Your Honor. Homeless or not, isn't that what you said in response to my colleague? Yes, yes. I thought you said it was only homeless. No. And now in response to Judge Harris's question, she proposed the notion that it doesn't have to be so with respect to everybody, but it's respect to your clients, which means your clients have to raise an affirmative defense. It doesn't validate the statute. You said it was only volitional. Didn't you say that it was only volitional? Because that's how I thought I understood your answer, but apparently one of us didn't. Okay. Well, it's not volitional. Right, it's not volitional conduct. And I guess what I'm saying is there are two different ways you can look at this. We think this statute is designed to target homeless alcoholics. Do you have a particularly client that has particularly affected here? Yes. But I thought in response, and I really would, I think we'd all appreciate a clear answer to this question. Yes. I thought in response to Judge Harris's question, you acknowledged that this was unconstitutional in your view with respect to everyone, whether you're homeless or not. If it's non-volitional, yes. If it's non-volitional, yes, it would be. And yes, Robinson will still support that and Powell, the five votes. Yeah, I don't feel, Counsel, one thing, I've listened very carefully, and I really can't see anything that you said today that is really very narrow. It all seems to me to have rather broad implications, and whether we're talking about civil vagueness or whether we're talking about disparate impact. Targeting to me is just a code word in a sense for disparate impact, or whether we're talking about non-volitional conduct and irresistible impulses and the like. All of that seems to me to be uncaverned and loose and not to admit readily or easily to any kind of discernible limiting principle. One thing you can say about Robinson is that it establishes a clear rule. We know what it is, and the states have abided, and Virginia has abided by it because it hasn't criminalized status in any way, shape, or form. Well, I don't, Your Honor, with respect, I don't think Virginia has identified any parallel to this provision, and we have not identified any other states. We talked about Utah the last day, that Utah might be the one other state that prohibits possession by habitual drunkards. We've looked at that more closely again, and there actually is a distinction in Utah law between habitual drunkards and interdictive persons. So the prohibition on interdictive persons from possessing does not appear to include habitual drunkards. So it does appear that Virginia is the only state. It's an outlier. It's a total outlier. And so that's not consistent with contemporary standards, and therefore, we think it is a main amendment violation, and we request that the court reverse. Thank you, Mr. Marcus. Thanks. We will have the clerk to, I guess, recess the court. We'll come down and re-counsel. This honorable court will take a brief recess. Thank you.
judges: Gregory, Wilkinson, Niemeyer, Motz, King, Duncan, Agee, Keenan, Wynn, Diaz, Floyd, Thacker, Harris, Richardson, Quattlebaum